Good morning, Your Honors. I'm Jareth Smith III. I represent Dr. Stroy. This is a Title VII case that was dismissed by the District Court on a finding that the Court did not have jurisdiction, subject matter jurisdiction, over the case because Dr. Stroy, in filing his retaliation claim, filed two days before the 180-day deadline set forth in the governing rules. We contend with respect to the jurisdictional argument that the District Court committed clear legal error. The District Court relied on the Talbert decision which was decided by this Court in 1990. However, as I pointed out in my briefing, Talbert is inconsistent with very clear direction from the Supreme Court which was decided subsequent to Talbert and Talbert is, we respectfully submit, no longer good law. Assuming, arguendo, that exhaustion is not jurisdictional as you're arguing to us. Right. What are your best equitable defenses that would apply to the timing? I think, really, on that issue, I think the best case is a case I pointed out in the 28J letter. It's basically that because the agency issued a final decision, a final agency determination, that cured any prematurity. There are a number of cases that stand for that proposition, but the most important one, probably for precedential purposes, is the case of Pincard v. Pullman Standard in the Division of Pullman, Incorporated, decided by this Court in 1982. And what happened in that case, John, and I'm going to spend a little time on it because I think it's important, the plaintiffs filed charges with the EEOC and commenced the District Court action four days later. At the time the District Court action had been commenced, they had not received a right to suit letter from the EEOC at that time. They did, however, receive a right to suit letter later on during the pendency of the litigation prior to the pretrial order and approximately four months before the trial as the findings of this Court. This Court held, and I quote, we hold that receipt of a right to suit letter is a condition precedent to a Title VII claim rather than a jurisdictional prerequisite. And that's a 1982 decision. And that here, receipt of the letters by appellants prior to the dismissal of the Title VII claim cured, emphasizing the word cured, their failure to initially satisfy the condition precedent accordingly we reverse the District Court. Courts have long, I mean, long had equitable power to toll and excuse for justifiable cause. A late filing, so is there any reason that there wouldn't be a basis for a court to excuse an early filing, which would seem to be less prejudicial to the other side? I'm not familiar with any, Your Honor. A number of the courts, particularly the case of the Eleventh Circuit case that I cited, Brown v. Snow, which the plaintiff filed 35 days early. And the Eleventh Circuit held that, well, the purposes of the exhaustion were satisfied. The plaintiff in that case had the counseling session that's envisioned by the regulations. He never requested that the agency investigation be terminated, and the agency didn't do anything to indicate that it would be terminated. And the Court held that he was sufficiently in court to pursue the merits. Let me throw out another. Judge Elrod said assume it's not jurisdictional. I'm going to excuse the retaliation claim, the early filing. How do you show any adverse action, even under, I know there's a little bit looser standard for retaliation claims versus a discrimination claims in terms of adverse actions, but how is, I mean, as I see it, he got a memo that basically says, you know, don't leave patients alone. Under what case is that or any other conduct you can point to an adverse action? Let me, if I can, Your Honor, if I can take a little time in answering that question, because I think it's really at the heart of this appeal. What we are contending is that there are genuine issues of material fact as to that issue. This Court in Porter v. Homer, Terrebonne Housing Authority, said that context matters. It's the whole series, it's a series of events which is significant, and the particular situation is what the Court has to look at. In this situation, our position is that in the context here, the retaliation was particularly harmful. Now, we're dealing with a physician, a primary care physician, whose reputation and professional stature are very important. How did it hurt his reputation? I mean, how widely distributed was this memo? Okay, well, I'll fix the answer to that, but it was submitted to every medical personnel at the VA, and it was submitted to management. The woman called in a meeting on September 6th of all the medical staff and scolded him, accused him of abandoning a patient, accused him of not addressing the medication needs of the patient, to the entire medical staff. And what case says that's an adverse action when there's no official disciplinary sanction attached to it, just being yelled at, for lack of a better term? I think it's a pure Burlington, Norlin situation, where the totality of the facts is not just one fact. Under the Hare case v. LSU, this Court had made very clear, you look at the totality of the facts, you look at the series of the facts, and here we have a series of facts that would, in our view, would certainly deter a physician from making a discrimination complaint. And so, you know, this lady calls this meeting, where the whole medical staff, she communicates this to management, and these are very, very damaging allegations to a professional physician, depending on his stature and reputation. The testimony was, he's very upset, he was humiliated. And, and the, certainly an adverse, in that you guys don't like the experience, I fully appreciate that, is it an adverse employment action? It's adverse to, it would make him second, give second thought to whether he wanted to file a discrimination complaint. If he knew that all this was going to happen to him, and he was going to be humiliated entirely. Your theory is it's retaliation as well as discrimination, but to go back to Judge Costa's question, how is this an employment action, as opposed to a non-employment action? Well, under Burlington, Norlin, the test, the bottom line test, is whether the action taken would tend to dissuade a reasonable person from filing a discrimination charge. And that's the, that, that's our argument, that these series of events would dissuade him from filing a discrimination charge. But it. It's an adverse employment action, instead of a defamation or some, you know, some sort of, I mean, there may be other claims, if people are maligning him, but he has to suffer an employment action. And I know that it's brought much broader than it used to be, as to what's an, a tangible employment detriment. But he didn't lose any pay, and he did not, he didn't, he didn't, I thought that it was stipulated that he didn't actually suffer at his employment, in terms of any of the kinds of things. He didn't get demoted, he didn't lose pay, he didn't lose a benefit of a particular shift as a doctor, he didn't lose, actually suffer an employment detriment. Well, I don't think it's just tangible. I don't think there's any case that says that. Tangible employment detriment is the standard. Well, it's actually a material adverse action, employment action. This is all about his employment. It's all about his actions during his employment. He's a physician treating his as a physician, employed by the VA, treating these patients. And all we've got to show, you got to remember that we don't have the old matern, ultimate employment action test for retaliation anymore. We have the new Burlington Northern test. On a matern, your Honor would be correct. But on the Burlington Northern, it's simply that the and it's all about his employment. So can you find any cases applying that standard, which is sort of a vague general standard, would it disincentivize people to complain about discrimination? Anything you can point to in the case law from our circuit or any other that says this kind of sort of like a public embarrassment, I guess, or humiliation is how you're characterizing it, that that counts? I think Halliburton addresses that directly. Now, I know that there's a disagreement among the Court about Halliburton, but the fact of the matter is it's a panel decision. And under the rule of orderliness, your Honors are obliged to comply with that. That was about ostracism and potential harm that can happen. And that's exactly on point here, your Honor. But I want to say this. What do you say about our case in Thompson versus the city of Waco? I'm sorry, what's the name of the case? Employment action that does not affect job duties, compensation or benefits is not adverse. What's the date of that? 2014. OK, I'm not familiar with the exact decision, but I can certainly submit a letter or something responding to it. OK, I'll give you the citation. 764 F. 3rd, 500. 5th Circuit, 2014. Thompson v. City of Waco, Texas. Well, you know, I'm sorry, I don't know what I've got to keep up with. OK, I'm not going to trick you in any way. I'm just trying to apply our case as the best we can to the evidence. I appreciate it. But I think Halliburton is the test. And I also point out to you on the new 2016 EEOC retaliation guidelines. They're very helpful. They accumulate the law in this area and it makes it clear that the test that we're talking about is the test to be applied. And so I want to. I'm sorry. Yes, Your Honor. But it didn't end on the September 6th meeting, Your Honor. The next day. If I may, I want to go back to the jurisdictional point. I'm sorry, Your Honor. I apologize for interrupting, but I want to go back to the jurisdictional point. Do you, I take your argument to be that if Talbert is good law, then it's jurisdictional. Your point is that Arbaugh overturns or undermines Talbert? Is that right? Yes, Your Honor. I mean, I think that the subsequent Supreme Court decisions very much underline, undermine. Just to be clear, if Talbert is good law, then you agree it's jurisdictional? If Talbert is still good law, I would agree it's jurisdictional. But Sebelius, Arbaugh, and Henderson are clear directions that it's not jurisdictional. If I may specifically hold that. It's not that clear to me. In Arbaugh, one of the key issues was that the element that was held non-jurisdictional in Arbaugh went to the substantive merits, the substantive adequacy of the claim. That's obviously not an issue here, right? There's nothing substantive about the timing issue that we're talking about. Yeah. No, it's about the two days from a jurisdictional standpoint. But, I mean, those cases are, you know, really, really clear. I mean, I think that we can't ignore, respectfully submit that the Court should not ignore, the direction of the Supreme Court when they say — I'm asking you to follow Arbaugh. Arbaugh says that the reason why I think it's the 15-day — I'm sorry, the 15-employee test, that goes to the substantive adequacy of the claim. Is there anything about this deadline issue that is substantive in nature that goes to whether or not you deserve to win? I don't think so. I think it's strictly a legal question. Is it jurisdictional? That's what the district court held. She didn't get into any equitable balancing or anything like that. She held it strictly jurisdictional, and I respectfully submit that that's no longer good law, from a number of different reasons. I think we're talking past each other. Do you agree that in Arbaugh, one of the key reasons that the Supreme Court found the 15-employee test to be not jurisdictional is because that standard, that issue, goes to the substantive adequacy of a claim? I don't think Arbaugh is limited to that, no, Your Honor. I think — But you agree it's part of the analysis. I think it's part of the analysis, but I don't think it's limited to that. Doesn't that at least raise the question that maybe Tolbert is still good law? It's debatable. Yeah, I understand. But it's sibilious. These types of rules are claim preclusion, not jurisdictional. That's the Supreme Court in 2013. I don't really know how it can be any clearer. But my time is gone, and I appreciate it very much. Thank you, Counsel. You've saved time for rebuttal. Thank you, Your Honor. May it please the Court, Assistant United States Attorney Catherine Vanesson for the Secretary of the United States Department of Veterans Affairs. To answer your question about the district court not getting to equitable reasons with regard to waiver or estoppel — we didn't use those words, but that's essentially what we're talking about. The district court didn't address waiver or estoppel or any equitable principle because it wasn't raised, quite frankly. The claimant, Dr. Story, did not raise any issue. In fact, until the reply brief was filed in this court, did I see anything that looked like a reason for filing early, an equitable reason for filing early. And that is when, in the reply brief, Dr. Story said he was in good faith. I guess you can equate that something along the lines of equity. This wasn't raised before, first of all, because the original complaint that was filed pro se in this matter was not served on the United States. There are some summons in the record. They were never served. There's no indication that they were served on anyone, but obviously the VA became aware about it because the ALJ decision, later in the same month that he files the complaint in district court, there's an ALJ decision that says we're dismissing your EEO complaint because you filed a complaint in district court. So obviously the VA found out about it at some point. It wasn't served on the United States until several months later when counsel enrolled for Dr. Stroy and filed a second amended, or a first amended complaint. So at some point the VA found out about it, but attached to that original complaint is a letter from the VA telling Dr. Stroy precisely when the 180 days would run. And it was August 4th. That's found at record 20 and 21. So he knew exactly when the 180 days would run, but he became impatient and filed anyway. There was no reason for the district court to address any equitable reason, even had she not found that the bar was jurisdictional. Assuming arguendo that it's not jurisdictional, what's the harm if it's disclosed ahead of time, even if they hear about it later? What's the harm? Well, you know, you could say, what's the big deal? Two days, what's the big deal? Agency, you know, agency sends him a letter and says, we're not going to finish our investigation. We want an extension and that's in the record, but we're not going to finish the investigation. The two days, whether it's two days or 30 days or one day, it deprives the agency of the opportunity to complete its investigation. What if it would have completed its investigation and found for Dr. Stroy? That's possible. We don't know. We'll never know. But for whatever it's worth, it deprives the agency of that opportunity, the opportunity that Congress gave them. A hundred. When it's so close in time, how do they even know? You know, so he files in federal court at day 178. You're saying that, I mean, that they, the person handling the investigation knew about that and then stopped the investigation that was going to be completed within two days. Well, apparently the letter that's attached to the original complaint is dated in July. The complaint district court was filed on August 2nd and the 180 days would have run on August 4th. So apparently it comes up. I mean, it's obvious that it comes up on someone's calendar and they realize, you know, Congress provides 180 days. So the agency's doing what it's supposed to be doing. And when it realizes it can't get the investigation complete, at least in this case, it sends a letter. Saying we can't complete it and they can't unilaterally extend that. Now, Dr. Stroy made a decision to unilaterally file suit early and make that 180 days go premature. The agency, now they can go beyond the 180 if Dr. Stroy agrees to either extend it or they can continue to go until the lawsuit's filed. Does the EEOC, I know you're a DOJ lawyer, but does the EEOC have a position on whether the requirement to exhaust with that agency is a jurisdictional prerequisite to suit? I don't know the answer to that question. The Department of Labor has independent litigating authority and I'm not going to tell you that. I don't read those decisions. But to stand here and give you a definitive answer. Does the EEOC have a position? I mean, you can see the vast majority of circuits say it's not jurisdictional. Well, you know, one of the things that counsel... You think most, what's your reading of this? Well, the Seventh Circuit for sure. I would agree with you on the Seventh Circuit. Well, what I believe... Some circuits even say we've, because our case law is mixed, some circuits even classify us as saying it's not jurisdictional. The Tenth Circuit did. Well, what I believe is that the district court followed Tolbert. Tolbert is based on Porter. Porter is based on Brown versus GSA. Brown versus GSA was 1976. Porter was 1981. That's, to me, I think that's the earliest decision. Those decisions, the Supreme Court decision in Brown, nor the panel decisions in Tolbert or Porter have been overturned. So the district court followed what was the law of this circuit and the Supreme Court. Now, this court, this panel may decide because... Well, Zipes expressly addressed that issue and said, we decide that tolling deadlines, and this goes to your point of prematurity versus late filing. In this case, we have prematurity, which counsel refers to interchangeably, and they're not interchangeably because we have Zipes. Zipes tells us that the deadline for filing is subject to equitable tolling, but it goes on to say, we haven't decided whether the exhaustion requirement is subject to equitable principles, and that's cited in the government's brief. But we have said that if you never file at all with the EEOC, that's not jurisdictional. We have cases, Womble and some others. How does that make... I mean, if you don't exhaust at all, it's not jurisdictional. That's a good point. But if you exhaust 178 of the 180 days, it is jurisdictional. I don't see how that can be squared. Well, we fight with that on the Federal Tort Claims Act too. I mean, I understand precisely your point, that if you say you don't have to exhaust at all, then what did Congress do? That's the worst. I mean, you've got... It doesn't mean that you don't have to exhaust. It means you have to follow the procedure. And in fact, in Brown, the Brown court said, you know, they looked at the Title VII scheme, the administrative scheme and the judicial scheme, and they said, this is the exclusive remedy to file suit against a federal agency. And that's how they got to jurisdiction. This is the exclusive preemptive remedy against a federal agency. And it says, after 180 days, does it say the court has no jurisdiction? No, it doesn't. But there are other statutes that don't say that. So how do you address the Supreme Court's recent cases, including even this term in Hamer, a case that came out this fall? There's three or four recent Supreme Court cases that take a much more textualist approach and say, generally, a jurisdictional statute should say it's jurisdictional. I agree with that. And even this court, usually when it says absolute prerequisite, it says it uses the word jurisdiction. How do you deal with that more recent Supreme Court authority, which is not just one case, it's two or three at least? I'm not going to stand here and say there aren't a lot of cases that are eroding the jurisdictional principle in various administrative schemes. But in this particular instance, they haven't said Brown is overruled. The Supreme Court has not overruled Brown. Maybe it will. But as we stand here today, that has not occurred. Tolbert's not overruled. And beyond that, I don't believe— It doesn't generally comment on our case law. No, that's correct. That's correct. You know, even if—once the court found it was without jurisdiction, it couldn't do—it couldn't go any further. The court did the right thing there. I mean, I have no jurisdiction. I can't do anything further. I have no authority to act. But even had the court made some sort of alternative finding, again, I go back to this court. There's nothing to base equity on in this—on this record. There was never—it was never addressed in the district court. It was simply, it's not jurisdictional. It's not jurisdictional. But never—it's not jurisdictional, and by the way, I'm deserving of equity. Can we talk about the merits of the— Well, but there was no adverse personnel action with regard to the race discrimination claim or the retaliation claim. So, is it your position that if we were to find that this should be equitably— equitably told or equitably excused, that you win anyway? Oh, I think we win anyway. The problem is the district court—I think we win either on 12b-1, 12b-6, or summary judgment. I don't think—this isn't—this is not a close call. It is not—not a close— You didn't address any of your arguments in that regard. Well, the district court did. The district court didn't reach those arguments. I did not reach those arguments, but— We can affirm on an alternative— Did you—I mean, you briefed them, didn't you? You said it— No, I said the district court had not addressed— For the district court, you move for summary judgment. That is correct. We can affirm on any ground raised— That is correct. That is correct. You did raise in summary judgment that there was no adverse action on— Right. —on discrimination and retaliation. And attached plenty of Rule 56 evidence. That's what—the district court properly found that Dr. Story failed to establish a prima facie case of discrimination and dismiss under Rule 56. That was on the—the claim that was properly exhausted. Okay, do you want to address— Oh, yes, Your Honor. Yes, Your Honor. I misunderstood you. I thought maybe you meant on the—on the retaliation claim. The right— Can you address the retaliation claim? Well, I can. Do you think we need to send it back? No, I don't think you need to send it back. In fact— Well, then somebody needs to address it if you don't think we need to send it back. And did you brief it? Well, the retaliation claim, I said the district court did not address those issues. So I did not specifically address them. With regard to—but let me—one thing on the retaliation claim, in Baker McHugh, which is cited in the government's brief, the—it was not a prematurity case. As I recall, it was a tolling case. But the district court—I mean, this court affirmed it, expressly affirmed it on 12b-1 grounds, even though they indicated that it was subject to tolling. But they affirmed it on 12b-1. So even if we—if you find that it is subject to equity, it can be affirmed based on the record. But that's if you find there's nothing to support equity. With regard to the retaliation claim, well, there's no adverse personnel action on either, retaliation or race, none whatsoever. There's absolutely—there's not a scintilla of evidence in the record that supports Dr. Stroy's claims that he was retaliated, that there was any adverse personnel action taken. He cites Ninth Circuit cases that say, well, an undeserved performance review can be the basis for an adverse—finding of adverse personnel action. But there is no evidence that he suffered an adverse personnel action. In fact, the evidence is exactly the opposite. He continued to work for the VA. He continued to receive the same pay. He continued to receive any bonuses that he was entitled to under certain quotas. There is absolutely nothing that he suffered as a result of this action or any alleged race discrimination claim. The record is devoid of any— Why didn't you make that argument in your brief? Well, I did on the race discrimination claim. I know, but not on the retaliation. Well, the district court didn't reach it, but it's strong, and I could have cut and pasted from my motion for summary judgment. There's nothing. There's nothing in the record to support an adverse personnel action. Do you have anything else? Well, I can—based on my brief, no. With regard to the retaliation claim, I can argue with regard to the race claim that I did brief. The only other thing I would ask the court, yesterday afternoon on my way to New Orleans, I received a 28-J brief from counsel that I would note only one case is potentially a new case. The rest of them are fairly old cases. I was able to do a limited amount of research last night, and I noticed that, like, for instance, Coke is an equitable tolling case. It's not a prematurity case, and so I haven't really had an opportunity to review those cases carefully. In the event I find a need to respond to the 28-J, I would ask for that opportunity to do so. Do you want to say new cases? No, no, I don't, but I received a brief from— I understand, but what do you mean respond to a case? Well, I guess you don't get to respond. I want to make sure that normally— I know when you read the rule, the 28-J, the federal rule, it says supplemental. It doesn't say new cases, but this Court has generally— generally means— But it's helpful, as we saw in the earlier case today, if you're going to talk about a case, to talk about it. Do you have any comment about maybe our NFL case, for example? Well, that's the one that I want to address that I wasn't able to review very well. That is the— We noted the general trend in that case towards away from jurisdiction and cited hammer and other cases. Oh, and I understand, and I can't argue that trend doesn't exist in this Court and all the other courts, but the point is the district court followed, did the right thing and followed the law in this case, so the law of the circuit. Just to clarify, you're asking for permission to respond to opposing cases? Well, I want to make sure it says what it says. Well, in the event— I guess you don't really have that opportunity. In cases, I mean, if they need to be— I don't think that he was allowed to say what the case has said just to tell us the names of the cases. If the cases have been overruled or something— But actually, I'm going to let you each file a 28-J on that other case that I cited in Waco, so if there's something that needs to be added, we're going to loosely allow a 28-J for both sides in this case, but it needs to be done. It's today, Wednesday. It needs to be done by Monday. And I guess I'll clarify. There was— Can I clarify, though? Not briefing. If one side files a 28-J and we don't strike it, then presumably the other party has an opportunity to respond. Well, if the cases are not— not normally if they're citing cases, unless they're saying the cases are not really good law— like they've been overruled or something about the case, but not a commentary. Well, a 28-J is really not a brief. It's just a— Yeah, it's not a commentary. I understand, but in this case, there was at least a string— I mean, there was at least some explanation of the case. Very brief. You may do the same type of thing that opposing counsel did on those cases, okay? And there's only one. But you may also address in a short— in the short form this other case that I cited and asked and allowed a 28-J on. So, but I'm not expecting— we're not expecting new briefs or anything of the sort or new arguments that haven't been presented. I understand. Did you have anything else to tell about that? Do you have any further— is there something you wish from the parties that we need to request? I'd be open to striking the 28-J for— the original 28-J for filing old— for citing old cases. I think that's what the Chief Judge has indicated. Having said that, at a minimum, I would think that the government gets a chance to respond. Okay. Well, the government is going to have a chance to respond, and everybody else— and you'll also have an opportunity to comment on the other case. Okay. Thank you. Thank you there very much. We have your argument. We have stated throughout this case that the issuance of the final agency decision 17 days after suit was filed cured the— cured the prematurity issue. There was nothing left for the agency to do. There's no evidence in this record that there was something the agency did and did not get to do. The evidence is that Dr. Stroy cooperated with the agency in full. He submitted to the counseling, and that's the same facts that the 11th Circuit relied on in the— in the Brown versus— When did you hear in the district court assert an equitable or defense of any kind that you'd be entitled to if it's not jurisdictional? Or you'd be entitled— I just said— I just said it's not so much a estoppel. It's more of it's just cured. All right. So where— where and what stage can we find that in the district court litigation? It's in the— it's in the memorandum— summary judgment memorandum in the— Your response to the summary judgment or 12B1 and 6. And that is it— that the Pinkard case of this court is right on point. 1982. Talbert is 1990. So even if the court would for some reason hold that this— these newer U.S. Supreme Court cases did not provide a clear directive to this court to hold in accordance with those newer cases, you still have the rule of orderliness as between Pinkard and Talbert because Pinkard precedes Talbert by eight years. And the Pinkard case is exactly on point. And it— I respectfully submit it controls the jurisdictional issue. With respect to the— to the adverse— adverse action, we believe that this adverse action was particularly harmful to Dr. Stroy's particular situation as a— as a physician and needing to maintain the stature of his reputation. I talked about the meeting through September 6th in response to the earlier questions from the court, but it doesn't end there. On September 7th, a— a administrative personnel ordered Dr. Stroy to not have any breaks during the day. Couldn't have a lunch break or a coffee break or anything between 8 and 4 30 p.m. On September 12th, Dr. Suzanne Taylor, the— the supervisor, telephoned Dr. Stroy and directed him to report to Alexandria for a fact-finding investigation or be fired. Two nurses that had been talking about the— about the allegation of abandonment of a patient, and it was talked about among the nurses, according to the— to the record, two nurses had made a complaint that Dr. Stroy had asked him about the allegation. And this led to this fact-finding investigation. Page four of my brief sets forth the results of this investigation, and it's absolutely insulting. I mean, it's absolutely insulting to this guy, and it went to his colleagues. Leaving his duty station, leaving a patient in a room without addressing his medication needs, being discourteous and not civil with co-workers, being undignified and displaying discourteous conduct, displaying bitterness and resentment in speech, attitude, and tone when dealing with people, being argumentative. And they made these findings without even talking to Dr. Stroy. And these go to all his— all of his colleagues. You know, doctors are not very litigious people unless they're sued. And my son-in-law's a doctor, and he's not going to go out and drum up litigation or anything, but he— talk about his professional stature, and you communicate to his colleagues, he's going to think twice about filing a discrimination charge. And that's basically what we have here. We have a deterrence. We have a potential for damage to his reputation, his damage to promotional opportunities. And I respectfully submit that there are genuine issues of material fact for a jury to decide. A jury can decide, would this set of facts dissuade a doctor in his position from filing that discrimination charge? And I respectfully submit the jury could easily find the answer is yes. And I ask that your Honor reverse the summary judgment, send the case back to the district court. Thank you very much, counsel. We have your argument. Thank you very much, Your Honor. The court would like to clarify its ruling regarding the 28J letters. The court notes that 28— the 28J letter filed on April 3rd does contain comments about the cases such as in Pinkard, this court held that the subsequent receipt of a right to sue letter cures the defect with respect to an early filing. Accordingly, the government is allowed to respond to the statement, the statements that are listed that are not just the names of the cases. Okay? Thank you very much. Thank you very much. Did you want us to submit a... If you want to do a 28J letter on that new case, I mean, well, it's not the case that the court referenced, then you are free to do so by Monday. And that's a Waco case? Yes, sir. Thank you very much. Thank you very much. The court will...